UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EMILY ELYSE BRENNAN,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL (PREVIOUSLY COLVIN), Acting Commissioner of Social Security,[1]<br><br>    Defendant. | No. 2:16-CV-062-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 18. Plaintiff Emily Elyse Brennan brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383F. After reviewing the

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I.  Jurisdiction

Ms. Brennan filed her application for Supplemental Security Income under Title XVI on April 11, 2012. AR 204-08. Her alleged onset date is December 1, 2008. AR 205. Her application was initially denied on July 16, 2012, AR 90-104, and on reconsideration on October 18, 2012, AR 105-119.

Administrative Law Judge ("ALJ") Caroline Siderius held a hearing on March 26, 2014, AR 42-63, and a supplemental hearing on July 29, 2014, AR 64-89. On September 25, 2014, the ALJ issued a decision finding Ms. Brennan ineligible for disability benefits under Title XVI. AR 21-37. The Appeals Council denied Ms. Brennan's request for review on January 19, 2016, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Brennan timely filed the present action challenging the denial of benefits on March 11, 2016. ECF No. 3. Accordingly, Ms. Brennan's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the

claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV.   Statement of Facts

Emily Brennan was born in 1989. AR 36. She has less than a high school education, but she is able to communicate in English. *Id*. She has previous work experience as a cashier. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

Ms. Brennan presents with physical and mental impairments. She has a long history of pelvic and lower abdominal pain, and she has undergone multiple laparoscopic procedures to address this. AR 23-30. She has also a history of migraine headaches and self-reported seizure activity. *Id.* In addition, she struggles with anxiety, depression, and post-traumatic stress disorder. *Id.* Due to her physical impairments, she has been on multiple medications for pain, including marijuana. *Id.*; AR 32.

## V.     The ALJ's Findings

The ALJ determined that Ms. Brennan was not under a disability within the meaning of the Act since April 11, 2012, the date her application was filed. AR 37.

**At step one**, the ALJ found that Ms. Brennan had not engaged in substantial gainful activity since April 11, 2012, her application date (citing 20 C.F.R. § 416.971 *et seq.*). AR 23.

**At step two**, the ALJ found Ms. Brennan had the following severe impairments: endometriosis; migraines; depressive disorder; and anxiety disorder with self-reported panic (citing 20 C.F.R. § 416.920(c)). AR 23-30.

At **step three**, the ALJ found that Ms. Brennan did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 30-31.

At **step four**, the ALJ found Ms. Brennan had the following residual functional capacity: She can "perform light work as defined in 20 CFR 416.967(b). She can lift 20 pounds occasionally and 10 pounds frequently. She can sit up to 6 hours in an 8-hour day and stand/walk up to 6 hours in an 8-hour day with a sit/stand option. She can occasionally kneel or crawl. She should avoid hazards such as unprotected heights and work around heavy machinery. She is capable of simple, repetitive tasks with only ordinary production requirements. She is capable of superficial contact with the general public and occasional contact with coworkers." AR 31.

The ALJ determined that Ms. Brennan is unable to perform her past relevant work as a cashier. AR 35-36.

At **step five**, the ALJ found that in light of her age, education, work experience, and residual functional capacity, there are also other jobs that exist in significant numbers in the national economy that Ms. Brennan can perform. AR 36-37. These include small parts assembler and hand packager. *Id.* The ALJ consulted a vocational expert in making this determination. *Id.*

## VI.   Issues for Review

Ms. Brennan argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) failing to properly evaluate the medical evidence, specifically the

opinions of examining doctor Kayleen Islam-Zwart, Ph.D., and non-examining doctor Stephen Rubin, Ph.D.; (2) failing to treat Ms. Brennan's somatoform disorder and borderline intellectual functioning as severe impairments at step two[2]; and (3) failing to properly evaluate Ms. Brennan's own symptom testimony. ECF No. 13.

## VII. Discussion

**A. The ALJ properly evaluated the medical evidence, including the opinions of Drs. Islam-Zwart and Rubin.**

**1. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id.* at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If a

---

[2] While Ms. Brennan does not formally list this among the issues in her introduction, she raises it in her argument, thus the Court will address it.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**2. Dr. Islam-Zwart.**

Dr. Islam-Zwart evaluated Ms. Brennan on three occasions: June 2011, September 2011, and March 2012. AR 303-09, 342-58. At all appointments, Dr. Islam-Zwart performed objective testing as well as documented subjective statements from Ms. Brennan. *Id.*

At the June 2011 exam, Ms. Brennan scored 26 of 30 on the mini-mental status exam. AR 306. Her full-scale IQ was recorded at 79, interpreted as borderline intellectual functioning. *Id.* She had generally average scores otherwise. AR 306-08. In addition to the testing, Dr. Islam-Zwart referred to multiple physical ailments reported by Ms. Brennan, including some that are not medically

documented, such as seizures. AR 308. Dr. Islam-Zwart stated that Ms. Brennan would be unable to work at that time, yet she also believed Ms. Brennan would be able to obtain her GED and to succeed with vocational training and more stability over her physical and psychological challenges. *Id.*

Despite Ms. Brennan reporting that she was much worse at the time of her September 2011 evaluation, AR 346, she scored 30 out of 30 on her mini-mental status exam and generally performed better on her other objective testing than in June 2011, AR 349. Nevertheless, Dr. Islam-Zwart again noted that Ms. Brennan would be unable to work and that her prognosis was dependent on a medical evaluation. AR 350.

At her final evaluation with Dr. Islam-Zwart, Ms. Brennan was generally successful again in her objective testing. She scored a 29 out of 30 on the mini-mental status exam and fell within normal ranges otherwise. AR 356-57. Dr. Islam-Zwart's impression was that Ms. Brennan still exhibited symptoms that would preclude her from employment, but once Ms. Brennan was medically stabilized, she would benefit from vocational training. AR 358.

ALJ Siderius gave little weight to Dr. Islam-Zwart's opinions. AR 35. The ALJ reasoned that Dr. Islam-Zwart "placed great emphasis on [Ms. Brennan's] presentation in those exams." *Id.* This is a reasonable interpretation, as the objective testing results do not demonstrate the level of impairment that Dr. Islam-

Zwart references. AR 303-09, 342-58. Since the testing does not support Dr. Islam-Zwart's opinion, the ALJ reasoned that she must have drawn heavily on Ms. Brennan's subjective statements. AR 35 This is further supported to Dr. Islam-Zwart's repeated references to Ms. Brennan's somatic preoccupation. AR 308, 350, 358.

An ALJ may properly discredit a doctor's opinion if it is largely based on self-reports by a claimant when the claimant's credibility has been properly discounted. *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *see also infra* 17-19 (review of credibility determination). Based on the inconsistency between the medical records, particularly Dr. Islam-Zwart's own test results, the ALJ did not err by interpreting that Dr. Islam-Zwart's opinion that was heavily influenced by Ms. Brennan's subjective symptom testimony. *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding that rejection of doctor's opinion was proper when medical records were inconsistent with the doctor's opinion regarding claimant's limitations). The Court finds no error.

**3. Dr. Rubin's opinion.**

Dr. Rubin testified as an impartial medical expert at the March 26, 2014, hearing. AR 47-54. Dr. Rubin opined that Ms. Brennan would have issues with absenteeism due to her chronic pain issues, but not due to her anxiety and

depression. AR 51-52. The ALJ afforded only some weight to Dr. Rubin's opinion. AR 35.

When speaking of issues within his area of expertise, psychology, Dr. Rubin was unable to point to legitimate barriers to Ms. Brennan's ability to work. AR 47-51. In fact, he specifically noted that her anxiety and depression were not limiting factors. AR 51-52. Additionally, he was unable to diagnose a somatoform disorder from his review of the full record. AR 51. His sole reason for opining Ms. Brennan would be precluded from sustaining a regular work week is absenteeism due to pain, an area that he even admits is beyond his expertise. AR 51-52.

Dr. Rubin also noted that much of Ms. Brennan's challenges were the result of a lack of drive. He noted that she was not actively looking for work. AR 52. Dr. Rubin specifically disagreed with Dr. Islam-Zwart's finding that Ms. Brennan was of borderline intellectual functioning and opined that Ms. Brennan is capable of learning. *Id.* According to Dr. Rubin, Ms. Brennan was "not trying to do some of these things that she would need to do." *Id.* This strongly influenced the ALJ's decision, which is a rational interpretation the Court will not disturb. *See* Molina, 674 F.3d at 1111.

**B. Any error at step two was harmless.**

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)). Under step two, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)).

Dr. Islam-Zwart diagnosed Ms. Brennan with somatoform disorder on three occasions. AR 303-09, 342-58. This was defined as an "undifferentiated" somatoform disorder, and Dr. Islam-Zwart repeatedly refers to Ms. Brennan as being "somatically preoccupied." *Id.* Likewise, on all three occasions, Dr. Islam-Zwart found Ms. Brennan to have borderline intellectual function. *Id.* Ms. Brennan asserts that these diagnoses should have been considered severe impairments at step two. ECF No. 13 at 14.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 14

There is no clear diagnosis of the somatoform disorder's effects on Ms. Brennan. The record demonstrates it could be related to chronic pain, or it could be manifested through seizures. In either manifestation, there would not be reversible error.

Assuming that the somatoform disorder is manifested by chronic pain, because the ALJ did account for pain in step four, this would be harmless error. ALJ Siderius properly assessed Ms. Brennan's credibility regarding symptom testimony, *see infra* 17-19, but still found that some pain would result from her migraines and endometriosis. AR 31. The ALJ accounted for this pain in the residual functional capacity and reserved Ms. Brennan to light work. *Id.* Thus, any failure to specifically include a somatoform disorder as manifested by chronic pain as a severe impairment would be harmless error.

Conversely, Dr. Lynne Jahnke testified that a seizure disorder was "the only thing that could be considered a somatoform [disorder]" in the record. AR 30, 70. Failure to include this seizure disorder was not in error, however, as the record lacks objective evidence of a seizure disorder. Even Dr. Jahnke herself noted this. AR 70. Ms. Brennan may have "pseudo seizures," according to Dr. Jahnke, but nothing objective supports this, such as an EEG or written description of the events. *Id.* In her decision, the ALJ echoed this and stated that there was "no EEG, no documentation of a witnessed event," that Ms. Brennan "has never been

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

prescribed medication for this or referred for a further evaluation" and "[i]mportantly, she continues to drive." AR 30. Because the record doesn't support a seizure disorder, failure to include this at step two would not be in error.

With regard to Ms. Brennan's borderline intellectual functioning, there is dispute in the record about her actual intellectual capacities and her ability to learn, AR 28, 52. Nevertheless, even if the condition was not specified as a severe impairment at step two, the ALJ did account for any potential intellectual challenges faced by Ms. Brennan. In the residual functional capacity, ALJ Siderius limited Ms. Brennan to "simple, repetitive tasks with only ordinary production requirements." AR 31.

Because Ms. Brennan was found to have at least one severe impairment, this case was not resolved at step two. Ms. Brennan does not assign error to the ALJ's finding at step three. Thus, if there was any error in the ALJ's finding at step two, it is harmless because all legitimate impairments, severe and non-severe, were considered in the determination Ms. Brennan's residual functional capacity. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity).

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16

### C. The ALJ properly evaluated Ms. Brennan's credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. Here, the ALJ cites numerous, valid reasons for the finding that Ms. Brennan's subjective symptoms were not entirely credible.

One significant issue concerns drugs. Drug-seeking behavior can demonstrate a tendency to exaggerate pain.[3] *Edlund*, 253 F.3d at 1157. During an

---

[3] Contrary to Ms. Brennan's assertion, the ALJ need not find drug abuse to be a severe impairment to affect a credibility determination. Ms. Brennan need not have a demonstrated addiction that affects her ability to maintain employment, the requirement at step two, to have valid questions raised about her credibility, an entirely different analysis.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~** 17

August 2012 emergency room visit at Whitman Hospital and Medical Center, doctors suspected Ms. Brennan of drug-seeking behavior because the treating doctor could not find "any injury or abnormality" and refused to provide strong painkillers such as hydrocodone. AR 522-23. Further, the hospital made her sign an acknowledgement that she had received documentation on "reducing preventable ED visits," which further raises suspicion regarding her visits. AR 525. Likewise, at a visit with John Colver, PAC, on April 5, 2013, Ms. Brennan was described as being "rather insistent on receiving medications" and "resistant to recommended lifestyle changes." AR 479. Ms. Brennan told Mr. Colver at this visit that she felt physical therapy was exacerbating her symptoms and wished to use medicinal treatment, AR 477, yet physical therapy records demonstrate that her signs and symptoms were inconsistent with the testing performed and her mobility. AR 504. Further, Ms. Brennan has a history of lying about drug use. *See* AR 336-37 (Ms. Brennan denied drug use, but tested positive for marijuana.)

These are all acceptable reasons for the ALJ's negative credibility determination, but ALJ Siderius provides multiple others, including sporadic treatment, inconsistent statements, and daily activities. In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 18

claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen,* 80 F.3d at 1284. ALJ Siderius provided numerous, valid reasons for her credibility determination, and the Court finds there was no error.

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 18,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 2nd day of February, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19